IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARIO J. SUFFI,** | |
| Plaintiff, | |
| | Case No. 10 C 2443 |
| v. | |
| **MICHAEL J. ASTRUE,** | Hon. Harry D. Leinenweber |
| Commissioner of Social Security, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mario Suffi (hereinafter, "Suffi") seeks review of the final decision of the Defendant Social Security Commissioner, Michael J. Astrue (the "Commissioner"), who denied his application for disability insurance benefits and supplemental security income pursuant to the Social Security Act, 42 U.S.C. §§ 423(d), 1383(c)(3). Suffi asks this Court to reverse this decision and order that he be paid benefits, or remand the case for a new hearing. The Commissioner asks that the Court affirm the decision. For the reasons that follow, the Commissioner's decision is affirmed.

## I.   INTRODUCTION

### A.  Procedural History

In August 2007, Suffi applied for disability insurance benefits and supplemental security income, alleging that he had

been disabled since a November 10, 2006 injury. Suffi was seeking a finding of a 14-month closed period of disability from that time until he resumed his past employment as a truck driver in January 2008.

Suffi's applications initially were denied on November 1, 2007, and upon reconsideration on February 8, 2008. Suffi then filed a request for a hearing before Administrative Law Judge Robert C. Asbille (the "ALJ"), which was held July 11, 2008. Suffi appeared *pro se* and testified at that hearing, along with Dr. Julian J. Freeman ("Freeman"), a medical expert, and William Newman ("Newman"), a vocational expert. On August 6, 2008, the ALJ found that Suffi was not disabled for the closed period of disability. The Appeals Council denied Suffi's request for review, making the ALJ's ruling the final agency decision subject to judicial review pursuant to 42 U.S.C. § 405(g).

## B. Factual Background

### *1. Suffi's Medical Treatment*

Suffi, 50, was working as a delivery driver when he was injured on November 10, 2006, while stepping off a dock onto a broken step. He was thrown backwards, jarring his neck. Suffi's job required him to load and unload the delivery truck and to lift up to 100 pounds.

Following the accident, Suffi was treated by several physicians. Dr. Hien Dang ("Dang"), a neurologist and

psychiatrist, diagnosed Suffi with vertigo and cervical, lumbar sprain and strain. An MRI of his brain was normal. By mid-December 2006, according to the medical reports, Dang found that Suffi's vertigo had abated and it was safe for him to return to work, although he was to stop if symptoms returned. Periodically, Suffi was diagnosed with nystagmus, or involuntary rapid movement of the eye, which was present in some examinations but absent in others.

In May 2007, Dr. Timothy Hain ("Hain"), a neurologist, reported that Suffi's hearing tests were normal and although he was suffering a slight nystagmus, this was not significant. In August 2007, Suffi told neurosurgeon Dr. Fred Geisler that he could work a full day and keep the dizziness to a minimum. However, if he turned his head back and forth repeatedly, he became dizzy and disoriented. Suffi also reported minor neck and shoulder pain. Suffi reported that he could look after himself without any pain and could manage to lift light to heavy objects if they were conveniently positioned. In September 2007, Suffi told two doctors at a pain management center that the pain in his neck was tolerable, and did not limit his activities as the dizziness did. Suffi also saw neurosurgeon Dr. Stanley Fronczak in September 2007, who indicated that Suffi had experienced degenerative changes in his neck consistent with his age, but none significant enough to warrant surgery. Suffi had physical therapy from October 2007 to

February 2008.  He complained of dizziness, imbalance, and blurred vision.

In October 2007, the Illinois Bureau of Disability Determination Services performed a physical residual capacity assessment of Suffi that concluded that he could perform medium-level work.  Another state agency physician reviewed the record in February 2008 and confirmed that finding.

### 2. *Hearing Testimony*

At the hearing before the ALJ, Suffi testified that following the accident, he suffered episodes of vertigo.  At the beginning, these attacks of dizziness occurred every day, but their frequency decreased over time.  Suffi was able to control his symptoms by sitting down and closing his eyes when he felt the onset of dizziness.  Suffi said these attacks of dizziness were the main reason he was unable to drive professionally again until January 2008.

Suffi testified that for the first month after his fall, his ability to do housework was affected by the dizziness, but then he learned to cope with it and could take care of himself.  Suffi also testified that within a year's time he was experiencing less than one attack a week, although he still was experiencing nystagmus.

Freeman testified that he practiced internal medicine and neurology.  After reviewing Suffi's medical records, he said that Suffi had a whiplash injury with complaints of dizziness.  Suffi

experienced neck pain at the time of the fall, but recovered from that quickly. However, he experienced vertigo, in that there was a disturbance of his inner ear balance mechanism. The medical records indicated that vertigo had become infrequent within a year of Suffi's accident. Freeman testified that Suffi's symptoms fit into Listing 2.07 of the Social Security regulations because he suffered hearing loss and a disturbance of his balance. The problem, Freeman testified, was that Suffi's attacks of dizziness were not of a lasting severity throughout a 12-month period. During the time period when Suffi was experiencing the attacks of dizziness, he would have been precluded from any activity involving rapid or sudden head movement or activities that would have exposed him to heights or to high levels of vibration. As such, Suffi would not have been able to drive a truck.

Finally, Newman testified that Suffi had been a truck driver throughout his work history. Newman testified that given the limitations on Suffi outlined by the ALJ, Suffi would not have been able to drive a truck during the time period of alleged disability. However, he would have been able to work as a laundry laborer, order filler, or janitor/cleaner. All those jobs were classified as unskilled, medium-level positions, Newman testified.

### 3. *The ALJ's Ruling*

The ALJ denied Suffi's claims for disability insurance benefits and supplemental security income, finding that Suffi was

not disabled. In so ruling, the ALJ followed the traditional five-step injury, which requires a sequential determination of: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals one listed by the Secretary; (4) the claimant's maximum work capacity, or residual functional capacity, and whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v). In order to find a claimant disabled, the ALJ must reach an affirmative answer at Step Three or Step Five. *Petrey v. Astrue*, 10 C 317, 2010 WL 5158100, at *6 (N.D. Ill. Dec. 14, 2010). The claimant has the burden of establishing Steps One through Four, but if he does so successfully, the burden shifts to the Commissioner at Step Five. *Id.*

At Steps One and Two, the ALJ found that Suffi was not currently employed and had a severe impairment, traumatic vertigo. At Step Three, however, the ALJ found that Suffi did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, SubPart P, Appendix 1. The ALJ found, based on the medical records and Suffi's own testimony, that within a year after Suffi's injury, his symptoms had become relatively moderate. For this reason, the ALJ found that Suffi did not meet the durational requirement to have a

disabling impairment because his condition did not "last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

At Step Four, the ALJ found that Suffi was not able to perform his past employment as a truck driver during the alleged period of disability. However, he found that Suffi had the residual functional capacity to perform medium-level work as defined in the regulations, although with some limitations. *See* 20 C.F.R. § 404.1567 (defining medium work as involving the lifting of no more than 50 pounds at a time). In determining Suffi's residual functional capacity, the ALJ found that Suffi's testimony concerning the intensity and lingering effects of his symptoms was not credible to the extent it indicated that he was unable to perform medium-level work.

At Step Five, the ALJ found that given Suffi's age, education, work experience, and residual functional capacity, there were other jobs Suffi could have performed during the period of alleged disability, including laundry laborer, order filler, and janitor/cleaner.

## II. LEGAL STANDARD

The Court must determine whether the Commissioner's final decision is "supported by substantial evidence and based on the proper legal criteria." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)(internal citations omitted). Substantial evidence is that which a reasonable mind might accept to support a

conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court should not substitute its opinion for that of the ALJ or re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). The ALJ is not required to address every piece of evidence, but must provide a "logical bridge" between the evidence and conclusions so that the court can address the validity of the agency's findings and provide meaningful review. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

### III. <u>ANALYSIS</u>

At issue in Suffi's appeal is whether the ALJ erred in his findings at Steps Three, Four, and Five. Specifically, Suffi argues: (1) the ALJ erred in finding at Step Three that Suffi did not meet a listed ailment for the requisite 12 months; (2) the ALJ's credibility finding at Step Four was patently wrong; (3) and the ALJ erred in his residual functional capacity finding at Step Four and his finding at Step Five as to jobs Suffi could have performed during the relevant time period.

#### A. Step Three Determination

Suffi contends that the ALJ's determination at Step Three that he did not have a listed impairment for the requisite period of time was wrong for several reasons. First, Suffi argues that the ALJ abandoned his responsibility to review the record and instead deferred to Freeman's conclusion that Suffi's attacks of dizziness were not frequent throughout a 12-month period so as to meet the

applicable listing. The listing at issue was Listing 2.07, "Disturbance of labyrinthine-vestibular function," which is "characterized by a history of *frequent* attacks of balance disturbance, tinnitus, and progressive loss of hearing." 20 C.F.R. Part 404, Subpart P, App. 1 (emphasis added).

Suffi notes that Freeman failed to provide an exact date when the attacks of balance disturbance became infrequent, and contends that there was no medical evidence to support Freeman's conclusion that by the end of the requisite 12-month period, the attacks "were not frequent or did not reach the level of being considered frequent by any measure." Suffi also argues that the ALJ failed to take into account contrary evidence, including a report filed by treating physician Hain at the request of the Bureau of Disability Determination Services. In that report, dated October 30, 2007 (nearly a year after Suffi's accident), Hain reported that Suffi continued to have dizziness induced by head movement and was unable to operate machinery or work as a truck driver.

Suffi claims that Hain's report amounted to an opinion that his condition was disabling, and that Hain's opinion was entitled to controlling weight to the extent it was not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). The problem with Hain's report, and the other evidence pointed to by Suffi, is that while it may indicate that Suffi continued to experience vertigo throughout a one-year period, it says nothing

about the frequency of his symptoms. Rather, Hain's opinion was merely that Suffi could not work as a delivery truck driver during the relevant time period, a conclusion with which the ALJ agreed. The ALJ was entitled to rely on Freeman's opinion, particularly when no medical expert offered a contrary opinion that Suffi met a listing for the relevant time period. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Further, the Court notes that Suffi's own testimony supported Freeman's conclusion that his attacks of dizziness were not frequent for the requisite 12-month period. Suffi testified that immediately after his accident, his attacks of dizziness were daily and could take as long as a half hour to subside. But he testified that as time went on, the number of spells decreased. Suffi testified that within a year's time, he had less than one attack of dizziness a week.

Suffi suggests that the ALJ should have contacted Hain to see what other restrictions Hain might have applied beyond his opinion that Suffi could not drive a truck. It is true that where the claimant is *pro se*, as Suffi was, the ALJ is required to supplement the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). However, courts "generally uphold[] the reasoned judgment of the ALJ as to how much evidence to gather, even when the claimant lacks representation." *Id.* Here, where Suffi points to no specific,

relevant evidence that the ALJ would have discovered by contacting Hain, the Court cannot find error in his decision not to do so.

Next, Suffi argues that the ALJ should have found him disabled at Step Three because at one point his symptoms met the severity of those in Listing 2.07. As such, Suffi contends, he should have been found disabled and the rules of 20 C.F.R. § 404.1594 should have been applied to determine when his disability ceased. However, as the Commissioner correctly notes, this argument ignores the fact that a claimant must show an impairment that has lasted or will last for a continuous period of 12 months in order to establish that he is disabled in the first place. 20 C.F.R. § 404.1525(c)(4); *see Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)(holding that claimant was not disabled where hip impairment lasted only five months).

Suffi further argues that the ALJ's Step Three determination was erroneous because the ALJ failed to consider all the impairments documented in his medical records, including a herniated disk, nystagmus, and tinnitus. Suffi argues that this combination of ailments may have met or equaled a listing. However, the burden was on Suffi to prove that his impairment met a listing and to show that his ailments met all the requirements of a listing. *Knox v. Astrue*, 572 F.Supp.2d 926, 935 (N.D. Ill. 2008). He failed to meet this burden.

Suffi relies on *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), where the appeals court held that the ALJ erred in performing a "perfunctory" analysis at Step Three and failing to mention the applicable listing or evidence supporting it. The instant case is distinguishable from *Ribaudo* because the ALJ discussed a relevant listing and provided, in some detail, his reasons for rejecting it. Where Suffi failed to provide evidence of an alternative applicable listing, the ALJ's ruling on this issue must be affirmed. *See Knox*, 572 F.Supp.2d at 935 (affirming even a terse Step Three determination where the claimant never argued in favor of a specific listing before the ALJ). Even now, Suffi speculates that his conditions might have met certain listings, but fails to point to any evidence showing that his impairments met or equaled all the criteria of any listing. Because there is substantial evidence supporting the ALJ's Step Three determination, it is affirmed.

### B. The ALJ's Credibility Determination

At Step Four, the ALJ must first determine whether there is an underlying medically determinable ailment that could reasonably be expected to produce the claimant's symptoms. *SSR* 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Once this has been determined, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which they affect the claimant's ability to work. *Id.* In making this

determination, the ALJ must assess the claimant's credibility in light of the entire record. *Id.* The ALJ must support his credibility finding with specific reasons supported by the evidence in the record. *Id.* at *2.

An ALJ's credibility determinations are afforded deference because it is the ALJ who hears and sees the witnesses. *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008). The Court will reverse the ALJ's credibility determination only if it is "patently wrong." *Id.* (quoting *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).

Here, the ALJ found that Suffi's symptoms were consistent with the impairments noted in his medical records. However, the ALJ found that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." Suffi contends this is meaningless boilerplate because the ALJ failed to explain his reasons.

It is true that in discussing Suffi's credibility, the ALJ used language that has been described by the Seventh Circuit as "boilerplate." *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010). But while ALJ's credibility finding was unfortunately phrased, the thrust of his finding was that Suffi's symptoms were not so severe as to prevent him from working in some capacity, and

the ALJ amply supported that finding with evidence from the record. For example, the ALJ cited Freeman's opinion that Suffi would have been able to work with some limitations, as well as the similar opinions of the state agency physicians. He also cited Suffi's own testimony that during the period of alleged disability his symptoms improved enough to allow him to attend to his personal needs. Finally, the ALJ noted that by January 2008, Suffi had returned to his job as a delivery truck driver, substantiating his finding that Suffi's symptoms were improving. This is sufficient support for the ALJ's credibility finding. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)(holding that ALJ's credibility finding should be upheld where it is "reasoned and supported.").

### C. The ALJ's Step Four Finding

In addition to challenging the ALJ's credibility finding, Suffi argues that the ALJ failed to undertake a function-by-function analysis of his residual functional capacity. *SSR* 96-8p, 1996 WL 374184, at *1 (July 2, 1996). However, the Seventh Circuit has held that the ALJ's findings as to residual functional capacity "need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009). Here, the ALJ found that Suffi could perform medium-level work and identified specific limitations that Suffi had, including difficulty lifting more than 25 pounds; being unable to sit, stand,

or walk for more than six hours in an eight-hour period; being unable to perform rapid head movements; and being unable to perform activities that involved balance, exposure to heights, or high levels of vibration.  This was sufficient to articulate the ALJ's findings.

Suffi notes that Dr. Hain limited him to lifting fewer than 20 pounds in his October 30, 2007, examination of Suffi.  Because medium-level work involves frequent lifting of up to 25 pounds, *see* 20 C.F.R. § 404.1567, Suffi contends that the ALJ's Step Four determination was erroneous.  However, although it might have been preferable for the ALJ to address this limitation, Suffi fails to meet his burden to show that any error by the ALJ in not doing so was harmful.

There is no requirement that an ALJ's opinion be perfect as long as the result is sound.  *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  Further, an ALJ need not discuss every piece of evidence in reaching his findings.  *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995).  Where the ALJ's findings are supported by substantial evidence, the failure to address a specific piece of evidence at most amounts to harmless error.  *Id*.  Here, the ALJ's findings were supported by substantial evidence, including Freeman's opinion and the reports of the state agency physicians.  As such, the ALJ's Step Four finding is affirmed.

## D. The ALJ's Step Five Finding

First, Suffi argues that the ALJ erred at Step Five by not including Suffi's need to occasionally sit and close his eyes for a few minutes to recover from dizzy spells in the hypothetical question he posed to the vocational expert, Newman. The ALJ posed this question:

> Assume an individual of claimant's age, education, work experience, and assume further I were to find from the medical evidence claimant could do the entire universe of exertional and nonexertional work with the exception that he could lift 50 pounds occasionally, 10-25 pounds frequently. Standing and walking is six out of eight and sitting six out of eight. Occasional posturals. Could not make any rapid positional changes of the head. No precise balancing. No vibration and no unprotected heights. . . . Could he return to his past relevant work?

Newman responded "no." A short time later, after Newman described the jobs that Suffi could do with those limitations, the ALJ asked, "And assume the claimant has frequent dizziness and is unable to be on task for as many as 30 minutes several times a week. Would he be able to work?" Again, Newman replied "no."

Here, the ALJ's hypothetical incorporated all the ailments he found to be supported by the medical record. *Ehrhart v. Sec'y of Health and Human Serv.*, 969 F.2d 534, 540 (7th Cir. 1992). As shown by his incorporation of limitations on activities that involved balance or rapid changes in head position into the hypothetical, as well as his follow-up question about frequent

dizziness, the ALJ clearly considered the effect of Suffi's vertigo on his ability to work. However, the ALJ ultimately found that these symptoms did not occur so frequently as to be disabling. As discussed above, this finding was supported by substantial evidence.

Finally, Suffi argues that the position of order filler, one of the positions Newman suggested he could hold during the period of alleged disability, is inconsistent with the hypothetical because the *Dictionary of Occupational Titles* (the "*DOT*") lists this position as needing more than three months of training, exceeding the unskilled level testified to by Newman. *See DOT* at 249.362-026. However, as the Commissioner notes, there is an unskilled "order filler" job in the *DOT*. *See DOT* at 922.687-058 (providing classification for "laborer, stores," and noting that this job may also be known as "order filler (any industry.").

More importantly, the supposed discrepancy between Newman's opinion and the *DOT* was not raised during the hearing. Here, the ALJ met his obligation to inquire as to whether Newman's opinions were consistent with the *DOT*, and he responded that they were. This is all the Social Security regulations require. *SSR* 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000); *see Stark v. Astrue*, 278 Fed. App'x 661, 667 (7th Cir. 2008)(holding no further inquiry was required where there was no apparent inconsistency between vocational expert's testimony and the *DOT* definitions). Because

there was no apparent conflict, the ALJ's Step Five determination is affirmed.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff Suffi's Motion is denied and the Final Decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

**DATE:** 5/5/2011